IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BARRY T. KOCHEL,** | : | **Civil No. 1:14-CV-1721** |
| | : | |
| **Plaintiff** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **SOUTH LEBANON TOWNSHIP and** | : | |
| **OFFICER SEAN MCCARRICK,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

This case arises out of an expletive-laden exchange between the plaintiff and a road-paving crew on September 11, 2012.  That angry exchange led to a disorderly conduct citation against the plaintiff, albeit a citation which was lodged under an inappropriate subsection of this state statute which related to "obscene" conduct. While Kochel was convicted of this summary offense before a Magisterial District Judge, that conviction was set aside by the Court of Common Pleas due to this citation error.  With the termination of this state criminal case, Kochel now brings this federal civil rights lawsuit, contending that the actions of police in citing him for disorderly conduct as a result of his profane argument with road workers violated the First Amendment.

This is an action brought by Barry T. Kochel ("Kochel" or "plaintiff") against the South Lebanon Township and one of its police officers, after the plaintiff was issued a citation for disturbing the peace by swearing at a road crew that was making improvements near the plaintiff's home. The plaintiff ultimately was acquitted of the summary offense of disorderly conduct by obscenity. Kochel claims that the issuance of the citation for obscenity violated his rights under the First Amendment of the United States Constitution and the Pennsylvania Constitution as retaliation for the exercise of free speech, and also constituted malicious prosecution under Pennsylvania law. Kochel also brings a claim for municipal liability against South Lebanon Township under the theory that the Township lacked sufficient policies and training for its officers, which led to the malicious issuance of an unsupportable citation that itself violated Kochel's rights.

Now pending before the court is a motion to dismiss the plaintiff's complaint. The defendants argue that Kochel's speech – which was apparently little more than a fusillade of vulgarities and a pugilistic challenge to a member of the road crew – is not subject to protection under the First Amendment or the Pennsylvania Constitution. They also argue that the issuance of a citation for $195 is not sufficiently adverse conduct on the part of a police officer to support a First Amendment retaliation claim; and they argue that Officer McCarrick had probable

cause to issue the citation, even though it was later dismissed, which they contend

moots Kochel's claim for malicious prosecution.  Additionally, the defendants argue

that the plaintiff cannot maintain a claim for relief under the Pennsylvania

Constitution as a matter of law.  Finally, the defendants argue that Kochel has not

supported his Monell[1] claim for municipal liability with sufficient factual allegations,

and likewise claim that there are insufficient facts to support a claim for punitive

damages on any cause of action brought in this action.

Recognizing the procedural posture of this case, where we are limited to an

assessment of the pleadings alone, we will recommend that the motion be denied with

respect to the police officer defendant, Sean McCarrick, since Kochel has stated a

plausible cause of action that cannot be disposed of on the pleadings alone.  However,

because Kochel's pleadings fail to state a municipal liability claim, it is recommended

that South Lebanon Township be dismissed as a defendant from this lawsuit.

## II.   BACKGROUND[2]

Barry Kochel is a resident of South Lebanon Township, Lebanon County,

Pennsylvania, and a veteran of the United States Army.  On or about September 11,

---

[1] Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978).

[2] The background to this report and recommendation is taken from the well-pleaded allegations set forth in the complaint, and which are accepted as true for purposes of considering the defendants' motion to dismiss only.

2012, at approximately 10:30 a.m., Kochel heard heavy machinery being operated on or near his property. (Compl. ¶¶ 7-8.) The commotion disturbed Kochel, who exited his house and encountered Ronald Johnson, the road foreman for the Township. (Id. ¶ 10.) Johnson heard Kochel say, "what the [fuck] do you think you're doing? If you think this is going to [fucking] continue you got another thing [sic] coming." (Compl, Ex. A, March 20, 2013, Hearing Transcript, at 10.) Johnson did not engage Kochel, but instead called the South Lebanon Township Police Department to complain about his conduct. (Id. ¶ 12.)

Officer McCarrick arrived at the scene and cited Kochel for Disorderly Conduct: Obscene Language/Gestures under 18 Pa. Cons. Stat. Ann. § 5503(a)(3), citation number P9390099-5. (Id. ¶ 13.) On January 4, 2013, Magisterial District Judge Anthony J. Verna held a hearing and found the plaintiff guilty of disorderly conduct. (Doc. 10, Def. Br., Ex. B.) The plaintiff filed in the Court of Common Pleas of Lebanon County a Notice of Appeal from Summary Criminal Conviction. (Id., Ex. C.)

On March 20, 2013, a hearing was held before The Honorable Bradford H. Charles of the Court of Common Pleas for Lebanon County to consider the citation that had issued. (Compl., ¶ 15.) During the hearing, the Assistant District Attorney handling the matter was asked to explain the Commonwealth's position on whether

4

Kochel's language constituted "obscene" language for purposes of the statute.  In response, ADA Meaghan Shirk stated that she "had not researched that specific issue, I'm sorry . . . . I was interpreting obscenity in laymen's term[s] rather than legal." (Compl, Ex. A, March 20, 2013 Hearing Transcript, at 16.)  The court agreed with Kochel that long-settled law made clear that the words Kochel uttered were not obscene.  At the conclusion of the hearing, Judge Charles granted Kochel's motion for judgment of acquittal.  (Compl., Ex. B, March 20, 2013 Order.)

The plaintiff initiated this action by filing a complaint on September 3, 2014. (Doc. 1.)  The defendants moved to dismiss the complaint on November 4, 2014. (Doc. 7.)  The motion is fully briefed and on January 9, 2015, the matter was referred to the undersigned for purposes of preparing a report and recommendation.  (Doc. 17.)

III.   **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir.2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on

5

its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45–46 (1957) ). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. Id. at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir.2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l

Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir.2002); see also U.S. Express

Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (holding that "[a]lthough a

district court may not consider matters extraneous to the pleadings, a document

integral to or explicitly relied upon in the complaint may be considered without

converting the motion to dismiss into one for summary judgment."). However, the

court may not rely on other parts of the record in determining a motion to dismiss.

Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994).

## IV.   DISCUSSION

### A.   First Amendment Retaliation

The defendants initially argue that Kochel cannot maintain a claim for First

Amendment retaliation on the facts pled because, in their view, Kochel's speech was

not entitled to protection under the First Amendment, but instead amounted to

unprotected "fighting words".  Additionally, the defendants argue that receiving a

$195 citation is a *de minimis* penalty and, as such, is insufficiently serious to qualify

as retaliatory conduct by Officer McCarrick for First Amendment purposes.  For his

part, Kochel observes that he was not charged with uttering "fighting words," or for

making threatening or violent statements; instead, he was instead charged only with

"obscenity," and the speech he allegedly uttered plainly does not qualify as "obscene"

as a matter of law.  Kochel also maintains that being assessed $195 may well be sufficient to deter a reasonable person from engaging in protected activity.

In order to state a claim for First Amendment retaliation, a plaintiff must allege that (1) he was engaged in constitutionally protected conduct; (2) he was retaliated against by someone acting under color of state law in a way that was "sufficient to deter a person of ordinary firmness from exercising his constitutional rights," and there is (3) a causal link between the protected conduct and the retaliatory action. Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006).  As the Third Circuit Court of Appeals has instructed, "[t]he key question is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." Id.

The defendants first seem to argue as a matter of law that receiving a citation for $195 is insufficiently severe to constitute retaliation.  The defendants offer no authority for this assertion, but instead merely seem to suggest that because jailing someone or imposing some restriction on their liberty would amount to retaliation in some circumstances, the same cannot be said about a financial penalty.

This argument fails on two scores.  First, it fails to take into account the fact that "Courts have found that the issuance of a traffic ticket is sufficient to constitute an adverse action for the purpose of a First Amendment retaliation claim. In Garcia

8

v. City of Trenton, 348 F.3d 726 (8th Cir.2003), the Eighth Circuit held that a reasonable jury could find that the issuance of four parking tickets totaling $35 in a two-month period would deter a person of ordinary firmness in exercising her First Amendment rights. Id. at 729." Hazel v. Quinn, 933 F. Supp. 2d 884, 890 (E.D. Mich. 2013).

In addition, this argument does not fully consider the procedural posture of this case, which comes before us on a motion to dismiss. At this stage of the proceedings, where our judgment is cabined and confined by the pleadings, we are not prepared to find as a matter of law that this conduct could not rise to the level of an adverse action under the First Amendment. Rather, as Kochel notes, the law is clear that "[d]etermining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003).

Mindful that whether a particular act is retaliatory in nature is often a fact-intensive matter, we do not find that the assessment of a criminal citation, and assessment of a monetary fine, is so *de minimis* that it can never be retaliatory as a matter of law, and in fact the law is to the contrary. "The First Amendment prohibits

9

government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." Hartman v. Moore, 547 U.S. 250, 256 (2006); see also Blankenship v. Machin, 471 F.3d 523, 531 (4th Cir. 2006) (deterrence found likely where a state actor has " ' engaged the punitive machinery of the government in order to punish' " a person for speaking out) (quoting Garcia v. City of Trenton, 348 F.3d 726, 729 (8th Cir. 2003); see also McCormick v. City of Lawrence, 253 F. Supp. 2d 1172, 1197 (D. Kan. 2003) ("the threat of arrest by a police officer is exactly the sort of act that would deter a person of ordinary firmness from exercising his or her First Amendment right to orally challenge that officer"). Mr. Kochel has alleged that he was assessed a criminal sanction for his speech activity, which may have been coarse but was not "obscene," and that he ultimately had to endure two court proceedings before the charges were resolved in his favor. This is sufficient to state a claim for retaliation, and the court should decline to embrace the defendants' view that the assessment of a criminal sanction of nearly $200 is *de minimis* or non-retaliatory as a matter of law. Moreover, the fact-found nature of the inquiry here makes dismissal at the pleading stage inappropriate.

The defendants also argue that the plaintiff's speech activity in this case was not entitled to any protection at all. Essentially, the defendants here are arguing that although the plaintiff was charged with disturbing the peace by making "obscene"

statements – a charge of which he was ultimately acquitted by the Court of Common Pleas – this court should determine from the pleadings alone that the plaintiff's speech was not protected because it was also no more than "fighting words," which are also not protected.  Although we acknowledge that "fighting words" is a narrow category of speech that is not entitled to First Amendment protection, we disagree that the court should declare the plaintiff's alleged speech activity to be "fighting words" from the pleadings alone.  Moreover, we are not persuaded that it is appropriate to determine that the plaintiff's speech was "fighting words" when the plaintiff was not, in fact, charged with uttering this category of speech.

All speech is protected by the First Amendment except narrow categories that are entitled to no protection, including obscenity and "fighting words."  Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 282-83 (3d Cir. 2004).  Fighting words are defined as words, "which by their very utterance[,] inflict injury or tend to incite an immediate breach of the peace."  Johnson v. Campbell, 332 F.3d 199, 212 (3d Cir. 2003).  The words must be beyond mere annoyance to the listener, but instead must serve as "an invitation to exchange fisticuffs."  Id.

We agree with the plaintiff that the defendants' focus on the fighting words doctrine is misplaced in this case, both because the plaintiff was not charged with disturbing the peace or making threats; he was charged with uttering obscene

11

language.  Pennsylvania law provides three separate categories of disorderly conduct: engaging in violent or threatening behavior; making "unreasonable noise," using "obscene language" or gestures, or creating a hazardous condition.  18 Pa. Cons. Stat. Ann. 5503(a).  Officer McCarrick cited Mr. Kochel with violating 18 Pa. Cons. Stat. Ann. § 5503(a)(3), charging that he "did yell obscene language from his property." (Doc. 1.)  The Officer did not, however, charge Mr. Kochel with making a threat to anyone and the fact that he did not does seem to undermine the defendants' current contention that the court should simply find, from the pleadings and from some testimony that was offered during Mr. Kochel's criminal proceedings, that the words he did utter were "fighting words".  Moreover, there is authority that would suggest that the language Mr. Kochel was charged with uttering may not qualify as "fighting words" either.  See Hess v. Indiana, 414 U.S. 105, 107 (1973) (holding that yelling, "We'll take the fucking street later" could not be punished as fighting words); see also Doc. 1, Ex. A, March 20, 2013 Hearing Transcript, at 17 (Judge Charles observed that the plaintiff's use of the "F word" was "not a fighting word.").  But whatever the facts ultimately reveal about Mr. Kochel's statements, we believe it would be premature for the court to reach a conclusion about them on the basis of the defendants' argument in a Rule 12(b)(6) motion.

Furthermore, although "obscene" language is not protected under the First Amendment, Eichenlaub, 385 F.3d at 282-83, the language Mr. Kochel was charged with using – the common, if crude, curse word "fuck" apparently used in a non-prurient way – has long been held to be not obscene for First Amendment purposes when used in this manner.  In Miller v. California, 413 U.S. 15 (1972), the Supreme Court delineated three requirements that must be met for speech to qualify as "obscene":

(a)     whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest;

(b)     whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and

©       whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

Id. at 24 (internal quotation marks and citations omitted).  Based on what has been presented, Mr. Kochel's coarse, and perhaps aggressive, statements to the road crew did not appeal to the prurient interest, and cannot reasonably be said to have been sexual in nature.  See Commonwealth v. Kelly, 758 A.2d 1284, 1286-87 (Pa. Super. Ct. 2000) (saying "F-you asshole" and extending middle finger found not to be

13

obscene); see also Clifton v. Borough of Eddystone, 824 F. Supp. 2d 617, 624 (E.D. Pa. 2011) ("Plaintiff's statement, although vulgar and coarse, is not obscene."); Brockway v. Shepherd, 942 F. Supp. 1012, 1016 (M.D. Pa. 1996) ("[U]sing a base term for sex does not change the disrespectful, offensive communication into one that appeals to the prurient interest."). In keeping with well-settled authority in this area, Kochel's statements were found by the Court of Common pleas not to be obscene, and that result seems plainly correct based upon what has been submitted in this case thus far.

In summary, therefore, we do not agree with the defendants that the plaintiff's First Amendment retaliation claims should be dismissed at the pleading stage because the citation that he was issued was so *de minimis* that it would be insufficient to deter a person of ordinary firmness from exercising his First Amendment rights; and we do not agree that on the basis of the pleadings alone, and the undisputed fact that Mr. Kochel's charged conduct was not "obscene" as a legal matter, that Mr. Kochel's speech was unprotected under the First Amendment. The motion to dismiss the plaintiff's retaliation claims should be denied with respect to defendant McCarrick but granted with respect to defendant South Lebanon Township.

## B.     Plaintiff's Claim for Injunctive Relief Under the Pennsylvania Constitution

The defendants argue that the plaintiff has no private cause of action under the Pennsylvania Constitution.  The plaintiff agrees that Pennsylvania state actors may not be sued for monetary damages for violations of the Pennsylvania Constitution, but he maintains that he has only requested declaratory relief for these state claims, and, therefore, the claims should not be dismissed.  (Compl., Request for Relief (b), ©, and (d).)

It is undisputed that there is no private cause of action for damages arising from violations of the Pennsylvania Constitution.  See Jones v. City of Phila., 890 A.2d 1188, 1215-16 (Pa. Commw. Ct. 2006).  However, although monetary relief is unavailable, "other remedies, such as declaratory or injunctive relief . . . are remedies under the Pennsylvania Constitution."  Id. at 1216.

The parties spend very little time addressing the substance of the plaintiff's claims for declaratory relief, focusing instead on whether or not a private right of action may lie under the Pennsylvania Constitution.  Although we have some question about the extent of the declaratory relief that the plaintiff seeks in this action – in particular, with respect to the expungement of whatever criminal record exists based upon the issuance of a citation to him – it will be recommended that this aspect of the

defendants' motion be denied at this time.  Proceeding in this way, and deferring ruling on the scope and extent of the relief that might be available to the plaintiff should he prevail on his claims, should await  a more complete record, and with the benefit of more focused briefing on this issue.

### C.    Malicious Prosecution Under Pennsylvania Law

Next, the defendants move to dismiss the plaintiff's claim for malicious prosecution under Pennsylvania law.  In Pennsylvania, to state a claim for malicious prosecution a plaintiff must allege that:  (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice.  Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996) (citing Haefner v. Burkey, 626 A.2d 519, 521 (Pa. 1993)); Hartpence v. Madison Twp., No. 3:13-0626, 2014 WL 690646, *4 (M.D. Pa. Feb. 24, 2014.); see also Kelly v. General Teamsters, Local Union 249, 544 A.2d 940, 941 (Pa. 1988).

In this case, there is no dispute that the first two prongs are satisfied.  The defendants, however, argue that the plaintiff's claim fails as a matter of law at the third prong because a Pennsylvania Magisterial District Judge found the plaintiff guilty of obscenity before having the conviction set aside on appeal to the Court of

Common Pleas.  The defendants cite to cases holding that a conviction by a judicial officer is conclusive proof of probable cause, even if that conviction is later set aside on subsequent appeal.  Additionally, the defendants urge the court to find at this early stage in the litigation that there are no plausible allegations from which to find that Officer McCarrick issued the citation maliciously.

In general "[t]he conviction of the accused by a magistrate or trial court, although reversed by an appellate tribunal, conclusively establishes the existence of probable cause, unless the conviction was obtained by fraud, perjury or other corrupt means." Zlomsowitch v. E. Penn. Twp., 2010 WL 1569633 (M.D. Pa. May 3, 2012) (citing Restatement (Second) of Torts § 667 (1977); see also Becker v. Godboldte, 2011 WL 2015213 (M.D. Pa. May 24, 2011) ("[A] conviction, upon examination by a judicial officer, conclusively establishes the existence of probable cause, regardless of whether the conviction is subsequently reversed on appeal.") (citations omitted). Following this line of cases, the defendants also cite to and rely on Hartpence, supra, where a Magisterial District Judge and the Court of Common Pleas had both found the plaintiff guilty of the offense charge, which was later set aside by the Superior Court on appeal. Hartpence v. Madison Twp., No. 3:13-0626, 2014 WL 690646, *3 n.3 (M.D. Pa. Feb. 24, 2014.). The district court in Hartpence found that the plaintiff's conviction by the Magisterial District Judge and the Court of Common

Pleas conclusively demonstrated that there had been probable cause for the charges in that case, even though the conviction was later overturned.  Based on these cases, the defendants maintain that the plaintiff's malicious prosecution absolutely fails as a matter of law because the Magisterial District Judge found Mr. Kochel guilty of the charged offense, even though that conviction was promptly set aside by the Court of Common Pleas after it appears all parties agreed that Mr. Kochel's conduct did not meet the legal definition of obscenity.

The plaintiff urges the court to take a less categorical view of the law in this field, and to focus on the particular facts of this case and how they differ from some of the cases cited by the defendants.  The plaintiff notes that unlike cases where there was a jury verdict, or where a plaintiff pled guilty to charges, or where a conviction was not overturned until appeal to the Superior Court, in this case the proceedings were far closer, with the charges being promptly set aside after proceedings before the Court of Common Pleas, which found in the plaintiff's favor.  Further, we are constrained to note that the judgment of the Magisterial District Judge in this case seemed to be at odds with what was then settled Pennsylvania case law which had long held as a matter of law that this type of language was not "obscene" as that term is used in the disorderly conduct statute.  See Commonwealth v. Kelly, 758 A.2d 1284, 1286-87 (Pa. Super. Ct. 2000) (saying "F-you asshole" and extending middle

finger found not to be obscene).  Thus, this is not a case where we are asked to defer to the factual probable cause findings of the District Magisterial Judge, a setting where great deference should be afforded to that factual probable cause determination.  Instead, it appears that the Magisterial District Judge's ruling rested upon a legal error regarding the reach of the statute, an error concerning a legal issue which had been addressed by Pennsylvania's appellate courts a decade prior to the decision in this case.  Additionally, the plaintiff has found some authority that seems to suggest that it is not always that case in Pennsylvania that a conviction by a Magisterial District Judge qualifies either as a conviction in a court of record, or as a conviction that establishes the existence of probable cause.  See Cap. v. K-Mart Discount Stores, Inc., 515 A.2d 52, 54 (Pa. Super. Ct. 1986) ("The lower court relied upon Lynn v. Smith, which held that a conviction by the justice of the peace in a summary proceeding, even though reversed on appeal, is sufficient proof of cause to defeat an action for malicious prosecution.  We do not agree."); see also Hamidian v. Occulto, 854 F. Supp. 350, 354 (M.D. Pa. 1994) ("[O]ur independent research has disclosed that a District Magistrate's decision may not be conclusive on the question of probable cause in a malicious prosecution claim under Pennsylvania law."); cf. Montgomery v. De Simone, 159 F.3d 120, 125 (3d Cir. 1998) ("We hold today that the Restatement's rule that an overturned municipal conviction presumptively

establish probable cause contravenes the policies underlying the Civil Rights Act and, therefore, does not apply to a section 1983 malicious prosecution claim.").

Although we acknowledge that recent caselaw in this area appears to favor somewhat the defendants' position, it is not clear that in all cases a conviction before a Magisterial District Judge absolutely forecloses a plaintiff from later bringing a claim for malicious prosecution.  It appears that there is a strong presumption that a conviction by a magistrate may establish the existence of probable cause, but there may be some instances where that conviction was so plainly unsupportable that a plaintiff should be permitted to argue that such a conviction, which was almost immediately set aside by the Court of Common Pleas in a decision reached on the record, does not conclusively establish that there was probable cause for the offense charged.  Furthermore, although in a malicious prosecution case the question of probable cause is a question to be answered by the court, Bristow v. Clevenger, 80 F. Supp. 2d 421, 434 (M.D. Pa. 2000), where that question "depends upon disputed issues of fact, the court should submit the factual disputes to the jury, and then make the probable cause determination based upon the jury's findings." id. (citations omitted).  On the facts pled, and on the limited briefing on this issue, we believe that the question of whether there was probable cause, which defeats a malicious prosecution claim, based solely on a conviction by the Magisterial District Judge that

may have rested on a legal error regarding the reach of the Pennsylvania statute and was nullified on appeal to the Court of Common Pleas, should be deferred pending discovery and, if appropriate, further motions practice.

Additionally, the defendants invite the court to dismiss the malicious prosecution claim on the grounds that there are no plausible facts to suggest that Officer McCarrick issued the citation to the plaintiff out of malice. "Malice has been stated to include ill-will in the sense of spite, the use of a prosecution for an extraneous, improper purpose, or the reckless and oppressive disregard of the plaintiff's rights." Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1988). Although there are few facts from which an inference of malice of Officer McCarrick's part may be drawn, here too it would be premature to dismiss the malicious prosecution claim on the pleadings alone, and it is recommended that the plaintiff be given an opportunity to develop his case on this point. Moreover, we note that malice may be inferred from the absence of probable cause – a matter that we find remains an open question at this point in the litigation. Bristow, 80 F. Supp. 2d at 435; Kelley v. General Teamsters, Chauffeurs, and Helpers, Local Union 249, 544 A.2d 940, 941 (Pa. 1988). Because the Court cannot at this time determine as a matter of law that the plaintiff will be unable to demonstrate malice on the part of Officer McCarrick, dismissal of the malicious prosecution claim would be inappropriate.

### D.    Plaintiff's <u>Monell</u> Claim

The plaintiff has also brought a <u>Monell</u> claim against South Lebanon Township, alleging that the Township failed to train Officer McCarrick and others, and that this failure led to the issuance of a unlawful citation to the plaintiff for uttering obscenity when that charge was plainly unsupported by the facts.   The defendants argue that this claim must be dismissed at the initial stages of litigation, prior to the parties engaging in any discovery, because the plaintiff has not demonstrated that the Township knew of prior violations in addition to the one involving Mr. Kochel.

Section 1983 of Title 18 of the United States Code provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

A municipality or other local government may be liable under this section if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation.  <u>Connick v. Thompson</u>, – U.S. –, 131 S. Ct. 1350, 1359 (2011); <u>Monell</u>, 436 U.S. at 692.  However, under § 1983, local

22

governments are responsible only for "their own illegal acts," and "are not vicariously liable under § 1983 for their employees' actions." Connick, 131 S. Ct. at 1359. Accordingly, plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused the injury complained of. Id. (citing Monell, 436 U.S. at 691).

As the Supreme Court explained in Connick, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Id. However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id.; Oklahoma City v. Tuttle, 471 U.S. 808, 822-823 (1985) (plurality) ("[A] 'policy' of 'inadequate training' is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell"). Accordingly, in order to bring a viable claim for municipal liability under § 1983, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Id. (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989). Deliberate indifference is a stringent standard, and requires proof that a municipality disregarded a known or obvious consequence of an omission in a municipality's training program. Id. "A

pattern of similar constitutional violations by untrained employees is 'ordinarily

necessary' to demonstrate deliberate indifference for purposes of failure to train." Id.

at 1360 (quoting Bd. of County Commn'rs of Bryan County v. Brown, 520 U.S.

397,409 (1997)).

In cases where a plaintiff is predicating a Monell claim on an alleged failure

to train officers or other employees, the Third Circuit has further explained:

> A municipality's failure to train police officers only gives rise to a
> constitutional violation when that failure amounts to deliberate
> indifference to the rights of persons with whom the police come into
> contact. City of Canton, Ohio v. Harris, 489 U.S. 378, 388, 109 S.Ct.
> 1197, 103 L.Ed.2d 412 (1989). We have held that a failure to train,
> discipline or control can only form the basis for section 1983 municipal
> liability if the plaintiff can show both contemporaneous knowledge of
> the offending incident or knowledge of a prior pattern of similar
> incidents and circumstances under which the supervisor's actions or
> inaction could be found to have communicated a message of approval
> to the offending subordinate. See Bonenberger v. Plymouth Township,
> 132 F.3d 20, 25 (3d Cir.1997).

Montgomery v. De Simone, 159 F.3d 120, 126-27 (3d Cir. 1998). It is "only where

a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can

a city be liable for such a failure under § 1983." Harris, 489 U.S. at 389. Thus,

where Monell claims are based upon an alleged failure to train officers, the

municipality's training program must be so inadequate that "in light of the duties

assigned to specific officers or employees the need for more or different training is

so obvious, and the inadequacy [of the current training] so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need." Id. at 390.

"Establishing municipal liability on a failure to train claim under § 1983 is difficult." Reitz v. Cnty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997). "Generally, deficient training can only amount to the requisite deliberate indifference 'where the failure to train has caused a pattern of violations.' Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir.2000). However, an exception exists and a 'failure to train' Monell claim may proceed absent a pattern of violations only where (1) 'a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools [or skills] to handle recurrent situations,' and (2) the likelihood of recurrence and predictability of the violation of a citizen's rights 'could justify a finding that [the] policymakers' decision not to train an officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right.' Kline, 255 Fed.Appx. at 629 (quoting Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 409, 117 S.Ct. 1382, 1391 137 L.Ed.2d 626, 642 (1997))." White v. Brommer, 747 F. Supp. 2d 447, 463 (E.D. Pa. 2010).

In this case, with respect to South Lebanon Township, the plaintiff has alleged that at the time he issued the citation, Officer McCarrick was a police officer with 14 years of experience who should have known the legal definition of "obscenity". (Compl., ¶ 31.)  The plaintiff then simply alleges that the Township "did not properly train defendant Officer McCarrick, or any of its police officers, in the proper application of the law, as it pertains to the First Amendment to the United States Constitution, Article 1, § 7 of the Pennsylvania Constitution, and/or obscenity." (Id., ¶ 32.)  The facts, as pled, are very spare and fall short of even alleging that the Township was aware of a pattern of violations sufficient to place the municipality on notice that its training program was deficient.  Furthermore, recognizing that "a 'failure to train' Monell claim may proceed absent a pattern of violations only where (1) 'a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools [or skills] to handle recurrent situations,' and (2) the likelihood of recurrence and predictability of the violation of a citizen's rights 'could justify a finding that [the] policymakers' decision not to train an officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right.'  Kline, 255 Fed.Appx. at 629 (quoting Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 409, 117 S.Ct. 1382, 1391 137 L.Ed.2d 626,

26

642 (1997)),″ <u>White v. Brommer</u>, 747 F. Supp. 2d 447, 463 (E.D. Pa. 2010), we find

that these spare assertions does not meet the pleading standards required for a <u>Monell</u>

municipal liability claim based upon a single alleged episode.  Since it is well settled

that a proper complaint "requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do,"  <u>Phillips v. County of

Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotation marks omitted)

(quoting <u>Twombly</u>, 550 U.S. at 555), these allegations which fail to link any training

issues to the injuries suffered here, and fail to otherwise meet the pleading

requirements for a <u>Monell</u> claim, simply fail to state a claim of municipal liability

upon which relief may be granted.  Therefore, dismissal of this municipal liability

claim is appropriate.

### E.    Qualified Immunity

Finally, Officer McCarrick argues that the claims brought against him should

be dismissed because he is entitled to qualified immunity.

The doctrine of qualified immunity shields government officials "from liability

for civil damages insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known."

<u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).   The doctrine protects public

officials "from undue interference with their duties and from potentially disabling

threats of liability." Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005). In accordance with this doctrine, government officials will be immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). Courts may exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in consideration of the circumstances presented by the particular case at hand. Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818 (2009).

"The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. This inquiry "must be undertaken in light of the specific context of the case." Id. at 201. Accordingly, "to decide whether a right was clearly established, a court must consider the state of the existing law at the time of the alleged violation and the circumstances confronting the officer to determine whether a reasonable state actor could have believed his conduct was lawful." Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010).

The defendants concede that the plaintiff adequately alleged a deprivation of a constitutional right, and that the right was clearly established. However, they argue that qualified immunity is nevertheless appropriate because it "was certainly reasonable for Officer McCarrick to cite plaintiff for disorderly conduct," apparently because in the defendants' view the plaintiff's "admissions in his Complaint conclusively establish that he was engaging in disorderly [conduct] for the purposes of intending to incite a fight." (Doc. 10, at 17.)

The difficulty with this argument is twofold. First, it ignores the fact that the Pennsylvania courts had construed the obscenity provisions of the disorderly conduct statute in a fashion which held that the statute did not reach this type of conduct more than a decade prior to the issuance of this citation. See Commonwealth v. Kelly, 758 A.2d 1284, 1286-87 (Pa. Super. Ct. 2000) (saying "F-you asshole" and extending middle finger found not to be obscene). Thus, there arguably were legal guideposts for the officer at the time of these events, guideposts which indicated that this specific obscenity charge was not appropriate in this case.

Further, the defendants ask the Court to do too much at this early point in the litigation. It does appear clear that the plaintiff uttered coarse, and even offensive language to the road crew; it may be that the plaintiff even said words that were disruptive. It may also be the case that another charge for disorderly conduct may

have been appropriate, although it is submitted that the court can not reach any conclusion about this on the basis of the pleadings and the testimony appended to the Complaint. But more importantly, the question here is whether Officer McCarrick is entitled to qualified immunity from the plaintiff's retaliation and malicious prosecution claims where he issued a citation for obscenity, an offense that, on the facts before the court, simply was not supported as a legal matter by the plaintiff's conduct. We find that the defendants have not demonstrated that qualified immunity is warranted on these facts, and thus recommend that the defendants' motion be denied at this time.

While the procedural posture of this case constrains us, we are compelled to observe that the well-pleaded facts set forth by Kochel in his complaint may well have supported a finding of probable cause to believe that Kochel engaged in disorderly conduct, albeit under different subsections of this statute. Pennsylvania's disorderly conduct statute embraces four different types of offensive behavior, and provides that:

> A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> (1) engages in fighting or threatening, or in violent or tumultuous behavior;
>
> (2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa. C. S.  § 5503 (a)(1)-(4).

While police erroneously charged Kochel with engaging in obscene behavior, a charge which state courts had suggested could not be maintained based upon expletives alone, in our view the well-pleaded facts set forth by Kochel in his complaint– which describe a loud, angry, profane, and intimidating exchange between the plaintiff and a road crew– could well establish probable cause on a disorderly conduct charge both because Kochel "engage[d] in fighting or threatening, or in violent or tumultuous behavior" and because he arguably "ma[de] unreasonable noise."  18 Pa.C.S. §5503(a)(1) and (2).  We further note that, on occasion, courts have conferred qualified immunity upon police officers who have erroneously charged a person with violating a facially valid statute which has subsequently been narrowed by judicial interpretations.  See Amore v. Novarro, 624 F.3d 522, 536 (2d Cir. 2010).  Furthermore, courts have held that where police charge a person erroneously under one statute, but had probable cause to charge that individual under a different section of the law, the police are entitled to qualified immunity.  See e.g.,

Wachtler v. Cnty. of Herkimer, 35 F.3d 77, 80 (2d Cir. 1994); Gagne v. DeMarco, 281 F. Supp. 2d 390, 396 (D. Conn. 2003).

While the parties have not briefed this issue, and it is not, therefore, before us for decision, this court is entitled to address this qualified immunity defense *sua sponte*, when appropriate.  See Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (affirming *sua sponte* recommendation of qualified immunity by U.S. magistrate judge).  In this case, we believe it is appropriate to raise this issue *sua sponte*, since the plaintiff has pleaded facts in his complaint which seem to arguably justify a disorderly conduct charge under other provisions of the statute.  Therefore, we recommend that this motion to dismiss be denied, but without prejudice to the filing of a properly documented summary judgment motion addressing the issue of qualified immunity.

### E.    Punitive Damages

The defendants also moved to dismiss the plaintiff's claim for punitive damages, but it appears that they misapprehended the scope of the damages being sought in this case.  The plaintiff has conceded that he is not pursuing punitive damages from the Township or from Officer McCarrick in his official capacity. Instead, the plaintiff's claim for punitive damages extends only to Officer McCarrick in his individual capacity, and the defendants have not demonstrated that such damages are unavailable for retaliation and malicious prosecution.  Indeed, it is clear

that the law has long been to the contrary.  See Smith v. Wade, 461 U.S. 30 (1983)

(punitive damages may be available in suit brought pursuant to 42 U.S.C.§ 1983);

McCarthy v. De Armit, 99 Pa. 63, 71 (Pa. 1881) (punitive damages available against

police officer for malicious prosecution).  Because the plaintiff is pursuing punitive

damages against Officer McCarrick in his individual capacity, and on claims for

which punitive damages may be available, the defendants' motion to dismiss this

aspect of the complaint should be denied as well.

## V.   RECOMMENDATION

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED

THAT the defendants' motion to dismiss the plaintiff's complaint (Doc. 7.) be

DENIED with respect to defendant McCarrick, without prejudice to the filing of a

properly documented motion for summary judgment, but GRANTED with respect to

defendant South Lebanon Township.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28   U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within fourteen
(14) days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all parties,
written objections which shall specifically identify the portions of the
proposed findings, recommendations or report to which objection is
made and the basis for such objections.  The briefing requirements set

forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


_/s/ **Martin C. Carlson**_
Martin C. Carlson
United States Magistrate Judge

Dated: May 29, 2015